**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 13-313 (RC)** |
| | : | |
| **v.** | : | |
| | : | |
| **ERIC JUSTIN TOTH,** | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case. For the reasons set forth herein, the government recommends that the Court accept the proposed plea agreement pursuant to Rule 11(c)(1)(C) and sentence the defendant to 360 months (30 years) of incarceration. The government further recommends that the Court sentence the defendant to a lifetime period of supervised release, with the conditions recommended by United States Office of Probation, including that the defendant undergo intensive sex offender treatment, the defendant's computer and internet usage be limited and monitored, and the defendant's direct contact with minors be limited and supervised. The defendant is required by statute to register as a sex offender for a minimum period of 25 years.

I.   **BACKGROUND**

On December 12, 2013, the defendant pled guilty to three counts of Production of Child Pornography, one count of Misuse of a Social Security Number, and one count of Identity Theft. During the plea hearing, the defendant admitted the following facts, as set forth in the written Statement of Offense, to be true.

1

### A.      Production of Child Pornography in Wisconsin in 2005

During the summer of 2005, the defendant was working as a counselor at a camp for children located in Wisconsin.  The defendant was a counselor for boys in the third and fourth grades.  As a senior camp counselor, the defendant stayed in the cabin overnight with the campers.  On or about July 20, 2005, the defendant took five photographs and two videos of child victim 1 while child victim 1 was sleeping.  At the time, child victim 1 was 10 years old and the defendant was child victim 1's camp counselor.  Two of the photographs and both of the videos depict child pornography; specifically, the images and videos focus on child victim 1's penis, which is exposed through a flap in his boxer shorts.

### B.      Production of Child Pornography in D.C. in 2006 and 2007

In August 2005, the defendant began working as a third-grade teacher at the Beauvoir National Cathedral School (Beauvoir School) located in the District of Columbia.  The defendant was an associate teacher in the 2005-2006 school year, meaning he was paired with a senior "directing" teacher.  The defendant was a directing teacher in the 2006-2007 and 2007-2008 school years.

On or about May 14, 2006, the defendant took a video of child victim 2 in a classroom at the Beauvoir School in the District of Columbia.  At the time, child victim 2 was 10 years old and was a student in the defendant's class.  The video shows child victim 2 standing on an object.  Child victim 2 is not wearing a shirt and, during the video, the defendant pulls down the child's shorts and boxer shorts, exposing the child's penis.  The camera is focused on the child's penis.  It is not apparent from the video whether child victim 2 was aware that he was being filmed.

On or about May 15, 2006, the defendant took approximately 13 photographs of child victim 2 at the Beauvoir School in the District of Columbia.  At the time, child victim 2 was 10 years old and was a student in the defendant's class.  Six of the photographs depict child pornography; specifically, the images focus on the child's penis, which is exposed because the child's shorts are being held away from the child's body at the waistband.  It is not apparent from the images depicting child pornography whether child victim 2 was aware that he was being photographed in that manner.

**C.      Production of Child Pornography in Maryland in 2007**

On or about August 23, 2007, the defendant took one video and five photographs of child victim 2 while child victim 2 was sleeping at a location in Maryland.  At the time, child victim 2 was 11 years old, and the defendant had access to the Maryland location.  The video and four of the photographs depict child pornography; specifically, the video and images show the defendant pulling down the child's boxer shorts to expose the child's penis, using his finger to move the child's penis so that it is pointing toward the camera and then moving the child's penis back and forth.

On or about August 26, 2007, the defendant took five photographs of child victim 2 while child victim 2 was sleeping at a location in Maryland.  At the time, child victim 2 was 11 years old, and the defendant had access to the Maryland location.  The photographs depict child pornography; specifically, the photographs show the child's penis being exposed by pulling up the leg of the child's athletic shorts while the child is lying down.

**D.      Production and Attempted Production of Child Pornography Using Hidden Cameras Placed in Bathrooms in D.C. and Maryland**

Between on or about August 1, 2005, and June 9, 2008, the defendant placed two cameras disguised as air fresheners in various locations, including in the bathroom of a location

in Maryland and in the bathroom of the Beauvoir School in the District of Columbia. The cameras captured at least four videos that depict or attempt to depict child pornography, each of which was taken on a different date. Video 1 of camera 1 shows child victim 2 taking off his clothes and getting in and out of the shower in the bathroom of a location in Maryland. The camera is aimed at the shower area, and the child's penis and buttocks are shown. Video 2 of camera 1 shows child victim 2 taking off his clothes and getting in and out of the shower in the bathroom of a location in Maryland. The camera is aimed at the shower area, and the child's penis and buttocks are shown. Video 3 of camera 1 shows child victim 2 taking off his clothes and putting on swim trunks in the bathroom of a location in Maryland. The child's penis and buttocks are shown. Video 1 of camera 2 shows the same scene as video 3 of camera 1 from a different angle. Video 2 of camera 2 was filmed in the stall of a bathroom at the Beauvoir School in the District of Columbia. The camera was mounted above the toilet. The recording captured 15 children, 12 different boys and 3 different girls, going to the bathroom. The video shows – and focuses on – the penises of 11 different boys, all of whom are prepubescent, while the boys are urinating. The video also shows the buttocks of the 3 girls. Three of the minor children were able to be identified based on the video: child victim 3, child victim 4, and child victim 5. All three children were in the defendant's class during the 2007-2008 school year and were less than 10 years of age.

**E.    Discovery of Child Pornography in D.C. in 2008**

On June 9, 2008, a camera was located at the Beauvoir School in the District of Columbia and was determined to contain images depicting child pornography. The camera was assigned to and/or used by the defendant. School administrators called the police and security officers

immediately escorted the defendant from the school campus.  The defendant left the jurisdiction soon thereafter.

On June 19, 2008, a media card was located at the Beauvoir School in the District of Columbia and was determined to contain images and one video depicting child pornography. The media card was in the defendant's classroom and/or storage closet.  In addition, three cameras disguised as air fresheners were located in the defendant's classroom and/or storage closet.  Two of the three air freshener cameras contained images that depicted or attempted to depict child pornography as described above.

F.     **Discovery of Child Pornography in Minnesota in 2008**

On August 12, 2008, airport employees at the Minneapolis/St. Paul Airport in Minnesota located the defendant's car in a parking garage.  It was later determined that the defendant's car entered the parking area on June 14, 2008, and had been abandoned there.  An apparent suicide note was observed on the seat of the car.  Law enforcement located a thumb drive on a keychain left in the car that contained images and videos depicting child pornography, including all of the child pornography described above except the videos filmed on the air freshener cameras.

G.     **Discovery of Child Pornography in Arizona in 2009**

In June 2009, law enforcement learned that the defendant had been living and working at a homeless shelter in Phoenix, Arizona, under an assumed name, since approximately August 2008.  The defendant left the Phoenix area before he was located by law enforcement.  During the course of its investigation of the defendant, law enforcement analyzed a laptop computer that had been used by the defendant when he was in Arizona.  Law enforcement located approximately twenty images depicting child pornography, as well as numerous images and at

least two videos of child erotica,[1] on the laptop computer.  The defendant had a password-protected user account on the computer.

**H.     Misuse of a Social Security Number**

In July 2009, the defendant began living and working in Austin, Texas, under the assumed name of J.W., a real person whom the defendant had previously met.  The defendant provided J.W.'s name, date of birth, and Social Security Number xxx-xx-0202, without J.W.'s knowledge or permission, to two employers while he was working in Texas from July 2009 until October 2012.  The defendant received pay checks and W-2 forms from those employers in J.W.'s name and with J.W.'s Social Security Number.  The defendant knew that Social Security Number xxx-xx-0202 was assigned to J.W.

**I.     Identity Theft**

The defendant assumed the identity of R.W., a real person whom the defendant had met, sometime during 2012.  On a date before April 20, 2012, in the state of Texas, the defendant used R.W.'s personal identifying information to fraudulently obtain a copy of R.W.'s birth certificate.  On or about April 20, 2012, the defendant used R.W.'s personal identifying information, including his name and date of birth, to obtain an Arkansas driver's license in the name of R.W.  On or about October 18, 2012, the defendant was issued a United States Passport and Border Crossing Card in the name of R.W.    In addition, between approximately April 2012 and April 2013, using R.W.'s name, date of birth, and other personal identifying information, the defendant opened multiple bank accounts in R.W.'s name.  The defendant took all of these actions without R.W.'s knowledge or permission.

---

[1]     Child erotica refers to materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

### J. Passport Fraud

Using the United States Passport he fraudulently obtained in the name of R.W., the defendant flew from Miami, Florida, to Managua, Nicaragua, on October 24, 2012.  Using the same passport, the defendant flew from Managua, Nicaragua, to Fort Lauderdale, Florida, on January 27, 2013, and back to Managua, Nicaragua, on February 11, 2013.

### K. Arrest and Discovery of Child Pornography

On or about April 20, 2013, the defendant was apprehended by Nicaraguan authorities. Numerous electronic items, including two laptop computers and multiple hard drives, belonging to the defendant were seized at that time.  Law enforcement's forensic analysis of those items led to the location of child pornography on one of the laptop computers.  Specifically, law enforcement has identified approximately 7 videos and 1,140 images depicting child pornography, at least some of which was obtained by the defendant using peer-to-peer file-sharing software.  There is evidence on the computer that the defendant was the primary or sole user of the computer and that he used the hard drive in the computer from at least July 2012, when he was living in Texas, until April 2013, when he was living in Nicaragua.

### L. Post-Arrest Interview

The defendant was interviewed by the Federal Bureau of Investigation after his apprehension in Nicaragua.  The defendant waived his <u>Miranda</u> rights and gave a statement. Among other things, the defendant admitted the following:  the defendant took pornographic pictures of child victim 1 when he was the child's camp counselor; the defendant took pornographic pictures of child victim 2 on various occasions in D.C. and in Maryland; the defendant placed hidden air freshener cameras in a home and in a bathroom at the school in D.C.; the defendant took his key chain and the thumb drive containing child pornography with

him when he left D.C. and ultimately abandoned it in his car in Minnesota; the defendant had access to a computer in Arizona; the defendant may have accessed child pornography while he was in Texas; the defendant fraudulently used the identities of J.W. and R.W., including using R.W.'s identity to fraudulently obtain various forms of identification.

**M.    Electronic Items Seized During Investigation**

The following electronic items were seized during the course of the investigation:

- Seized from Beauvoir School (the defendant's classroom/closet) on various dates starting on June 9, 2008:

  - Extreme III SanDisk 2.0 GB Serial No. BE07132022992B;
  - 2 Olympus Digital Voice Recorders;
  - 3 Home Guard Digital Video Capture Cameras;
  - Digital Photo Key Chain;
  - Kingston Technology Memory Card;
  - Kingston Technology Hi Speed Reader;
  - Digital Video Camera;
  - HP Notebook Laptop Computer Serial No. 2CE7310CW8;
  - Sony Cyber-Shot Digital Camera Serial No. 587829;
  - Sony Cyber-Shot Digital Camera Serial No. 587861;
  - Sony Handy Cam Video Recorder Serial No. 340312;
  - Canon Digital Voice Recorder Serial No. 4711100817.

- Seized from a home where the defendant was staying prior to his disappearance, recovered on or about June 27, 2008:

  - Pioneer XM Radio Receiver;
  - New Sprint Phone in the box Serial # HEX A0000005406E1F.

- Seized from the car in Minnesota that the defendant abandoned in the airport in June 2008:

  - Thumb drive on keychain.

- Seized from the defendant's home in Nicaragua on April 20, 2013:

  - Canon digital camera;
  - Seagate Hard Drive Serial No. 5VJC1L05;
  - Seagate Hard Drive Serial No. 5YV00JQY;
  - WD Hard Drive Serial No. WX91A92A3749 and HP laptop ;
  - Plant First Hard Drive Serial No. SOY8NEAC404601 and HP laptop.

The defendant agreed to the forfeiture of all of the listed items as part of the plea agreement.

## II.    SENTENCING CALCULATION

### A.    Statutory Penalties

The charge of Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), carries a mandatory minimum sentence of 15 years of imprisonment and a maximum sentence of 30 years of imprisonment; a fine of $250,00, pursuant to 18 U.S.C. § 3571(b)(3); a term of supervised release of not less than 5 years and up to life, pursuant to 18 U.S.C. § 3583(k); mandatory restitution under 18 U.S.C. § 3663A; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

The charge of Misuse of a Social Security Number, in violation of 42 U.S.C. § 408(a)(7)(B), carries a maximum sentence of 5 years; a fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. § 3571(b)(3); a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2); restitution under 18 U.S.C. §§ 2259 or 3364; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

The charge of Identity Theft, in violation of 18 U.S.C. § 1028(a)(6), carries a maximum sentence of 5 years pursuant to 18 U.S.C. § 1028(b)(2)(A); a fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. § 3571(b)(3); a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2); mandatory restitution under 18 U.S.C. § 3663A; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

In addition, there is a mandatory special assessment for each felony conviction pursuant to 18 U.S.C. § 3013(a)(2)(A).

Pursuant to 42 U.S.C. § 16911(3)(B), the defendant will be considered a Tier II sex offender for purposes of the Sex Offender Registration and Notification Act "SORNA." Pursuant to 42 U.S.C. § 16015(a)(2), as a Tier II sex offender, the defendant will be required to register as a sex offender for 25 years.  The defendant will also be subject to local and state registration requirements.

### B.      Guidelines Range

The Presentence Investigation Report ("PSR") sets forth the correct calculation of the defendant's Guidelines range.

For count 1, Production of Child Pornography, the base offense level pursuant to U.S.S.G. § 2G2.1(a) is 32.  PSR ¶ 53.  A four-level increase applies because the offense involved a minor who had not attained the age of 12 years pursuant to U.S.S.G. § 2G2.1(b)(1)(A).  PSR ¶ 54.  A two-level increase applies because the minor was in the custody, care, or supervisory control of the defendant pursuant to U.S.S.G. § 2G2.1(b)(5).  PSR ¶ 55.  There are no additional adjustments, resulting in an adjusted offense level of 38.  PSR ¶ 51.

For count 2, Production of Child Pornography, the base offense level pursuant to U.S.S.G. § 2G2.1(a) is 32.  PSR ¶ 60.  A four-level increase applies because the offense involved a minor who had not attained the age of 12 years pursuant to U.S.S.G. § 2G2.1(b)(1)(A).  PSR ¶ 61.  A two-level increase applies because the minor was in the custody, care, or supervisory control of the defendant pursuant to U.S.S.G. § 2G2.1(b)(5).  PSR ¶ 62.  There are no additional adjustments, resulting in an adjusted offense level of 38.  PSR ¶ 66.

For count 3, Production of Child Pornography, the base offense level pursuant to U.S.S.G. § 2G2.1(a) is 32.  PSR ¶ 67.  A four-level increase applies because the offense involved a minor who had not attained the age of 12 years pursuant to U.S.S.G. § 2G2.1(b)(1)(A).  PSR ¶ 68.  A two-level increase applies because the offense involved the commission of a sexual act

or sexual contact U.S.S.G. § 2G2.1(b)(2)(A).  PSR ¶ 69.  There are no additional adjustments, resulting in an adjusted offense level of 38.  PSR ¶ 73.

Counts 1, 2 and 3 are not considered closely related and therefore do not group together pursuant to U.S.S.G. § 3D1.2.   Each count therefore constitutes its own group.  PSR ¶ 50.

In addition, pursuant to U.S.S.G. § 2G2.1(d), if the offense involved the exploitation of more than one minor, the multiple count adjustment is applied as if the exploitation of each minor had been contained in a separate count of conviction.  PSR ¶ 51.  In this case, as described in detail in the factual section, there were 23 separate instances of exploitation of 17 different minors, including counts 1, 2 and 3.[2]  Accordingly, there are 20 separate acts of exploitation in addition to the charged counts, each of which constitutes its own group for purposes of determining the Guidelines calculation.  The Guidelines calculation for each instance/group is the same as the calculation for counts 1 and 2:  base level of 32; victim was less than 12 years of age, increasing by four levels; and the victim was within the custody, care or supervisory control of the defendant, increasing by two levels.  Groups 4-23 each have an adjusted offense level of 38.  PSR ¶ 74-213.

Count 4 and 5 are considered closely-related and group together pursuant to U.S.S.G. § 3D1.2.  PSR ¶ 52.  For those counts, the base offense level is 6 pursuant to U.S.S.G. § 2B1.1(a)(2).  PSR ¶ 214.  A six-level increase applies because the offense involved the transfer or use of any means of identification unlawfully to produce or obtain any other means of

---

[2]        The 23 separate instances of exploitation are as follows:  (1) July 20, 2005, child victim 1; (2) May 14, 1006, child victim 2; (3) May 15, 2006, child victim 2; (4) August 23, 2007, child victim 2; (5) August 26, 2007, child victim 2; (6) video 1 of air freshener camera 1, child victim 2; (7) video 2 of air freshener camera 1, child victim 2; (8) video 3 of air freshener camera 1 and video 1 of air freshener camera 3, child victim 2; (9) video 2 of air freshener camera 3, child victim 3; (10) video 2 of air freshener camera 3, child victim 4; (11) video 2 of air freshener camera 3, child victim 5; (12-23) video 2 of air freshener camera 3, 12 unidentified child victims.

identification pursuant to U.S.S.G. § 2B1.1(b)(11)(C)(i).  PSR ¶ 215.  There are no additional adjustments, resulting in an adjusted offense level of 12.  PSR ¶ 219.

The multiple count adjustment is determined pursuant to U.S.S.G. § 3D1.4.  Groups 1 through 23 are assigned 1 unit each pursuant to § 3D1.4(a).  Group 24 is assigned 0 units because it is 9 or more levels less serious than the group with the highest offense level pursuant to § 3D1.4(c).  Thus there are 23 total units.  PSR ¶ 226.  The highest offense level (38) is increased by 5 levels, the maximum possible adjustment, for a combined adjusted offense level of 43.  PSR 227-229.

The PSR includes a five-level enhancement pursuant to U.S.S.G. § 4B1.5(b)(1), on the grounds that the defendant, having committed a covered sex crime, engaged in a pattern of activity involving prohibited sexual activity but did not receive an enhancement as a career offender (§ 4B1.1) or as a previously convicted sex offender (§ 4B1.5(a)).  PSR ¶ 230.  The plea agreement does not contemplate this enhancement.

 The defendant is entitled to a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).  PSR ¶ 231.  The government hereby moves to decrease the defendant's offense level by an additional level pursuant to § 3E1.1(b) because he timely notified the authorities of his intention to enter a guilty plea and thus permitted the government and the Court to preserve resources.  PSR ¶ 232.  As a result, as set forth in the plea agreement, the defendant's total offense level is 40.

The defendant has no criminal convictions that result in any criminal history points. PSR ¶ 234-236.  Accordingly, the defendant has a criminal history score of zero and is in criminal history category I.  PSR ¶ 237.

With a total offense level of 40 and a criminal history category of I, the defendant's sentencing range is 292 to 365 months of incarceration.

## III.    GOVERNMENT'S RECOMMENDATION

### A.    Application of the Federal Sentencing Guidelines

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).  As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1).  Booker, 125 S. Ct. at 756.

In post-Booker cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  See United States v. Gall, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.").  After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a).  Id.  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

The Guidelines themselves seek to implement in a fair and uniform way these factors.  A sentencing court must make an "individualized assessment based on the facts presented."  Gall, 552 U.S. at 49.

> **B.     Basis for the Government's Recommendation**

The government submits that the agreed-upon sentencing range of 22 to 30 years is appropriate and warranted in this case and specifically recommends a sentence of 30 years with lifetime supervised release based on the factors in 18 U.S.C. § 3553(a).[3]  The recommended sentence is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

> **1.     The Nature and Circumstances of the Offenses, and the History and Characteristics of the Defendant**

The defendant's crimes against children are undeniably heinous.  As a camp counselor and teacher of young children, the defendant was trusted by parents, his employers, the community, and the children he taught.  Eric Toth betrayed that trust.  Toth engaged in behavior that should be unthinkable by anyone, much less by an individual who is supposed to care for and educate children.  His behavior cannot be tolerated and deserves to be punished.

The defendant appears to have led a fairly normal childhood.  His parents divorced when he was young, but he had a stable home life and did not report any abuse or neglect.  The defendant eventually went to college and became a teacher at a prestigious private school in Washington, D.C.  The defendant has no prior criminal convictions or other criminal history.  However, as set forth in detail in the PSR, the defendant has an extensive history of psychological problems and treatment.

---

[3]        As stated in section 4 of the plea agreement, the parties agree that "a sentence of between 22 and 30 years of incarceration, followed by *at least* 300 months (25 years) of supervised release, is the appropriate sentence for the offense to which [the defendant] is pleading guilty" (emphasis added).

Most significantly, long before he became a camp counselor or teacher, the defendant was aware of his sexual interest in children. The defendant reported being concerned by his urges and confiding his concerns to trusted individuals. Notwithstanding these concerns, the defendant pursued a career that put him in constant contact with the very demographic in which he was sexually interested. The defendant took advantage of the positions of trust that he obtained to exploit children not once, but repeatedly: in July 2005, May 2006, August 2007, and on various other days between August 2005 and June 2008. By taking sexually explicit photographs and videos of children in his care, the defendant satisfied his own sexual urges at the expense of the children whom he should have been protecting and educating. His behavior is inexcusable.

The defendant's actions not only constitute a breach of trust and demonstrate moral depravity, but also directly and seriously harm the child victims, their families, their schools and camps, and their communities. The harm caused by the defendant is irreversible and far-reaching. The victims in this case, like all victims of child pornography, inevitably must deal with complex feelings – feelings of being used as a sexual object, feelings of confusion, and feelings of betrayal. They may spend the rest of their lives wondering who, if anyone, has seen portrayals of their exploitation, the worst moments of their lives. The negative effects of the defendant's crimes may not manifest in these children immediately, but will be something each child will have to face and cope with for years to come. The victims' families are similarly traumatized. Particularly in a case like this, where the exploitation is perpetrated by a trusted teacher, parents may be left unable to answer the questions of what they could have done to protect their child and whom they can trust. Schools and communities – the specific camp,

school, and communities in this case – were left reeling by the defendant's conduct and faced the enormous task of recovery and healing.

The nature of the defendant's crimes against children, when considered in light of his history and characteristics, support the imposition of a very lengthy sentence of incarceration.

The defendant's crimes of identity theft, Counts 4 and 5, are also serious crimes that caused real harm to the victims. In his multi-year effort to evade law enforcement, the defendant took advantage of people he met or otherwise came in contact with by using their names and identifying information for his own selfish purposes. The defendant assumed other people's identities – opening accounts, obtaining identifications, signing up for services. His actions left a trail which the victims will have to clean up by trying to separate their personal affairs from the actions the defendant took in their names. These offenses should not be taken lightly.

### 2.      Punishment, Deterrence, Protection, and Correction

The government's recommended sentence of 30 years of imprisonment and lifetime supervise release strikes the appropriate balance among the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment.

The defendant is relatively young, just 32 years old, and his crimes of exploitation were committed when he was even younger, between the ages of 23 and 26. The defendant's crimes were driven by his long-standing sexual interest in children. During the time that he was evading law enforcement, the defendant continued to feed this prurient interest by viewing child pornography. The defendant's collection of child pornography, including from online sources further victimizes the children being depicted, perpetuates the illicit market for child pornography and potentially encourages the abuse of other children. In addition, while living

16

under assumed identities, the defendant had extremely close contact with at least one family with minor children.[4]

The defendant's crimes, his age, and his long-standing sexual interest in children establish the need to incapacitate him for a long period of time to protect society and deter future offenses. Imposing this lengthy period of incarceration and a lifetime of supervised release will best protect children and society at large and will provide essential opportunities for the defendant to receive correctional treatment.

### 3.     Kinds of Sentences Available

The defendant should be sentenced to a term of incarceration. The defendant is not eligible for a probationary sentence under the Guidelines, and the parties have agreed that a sentence of between 22 and 30 years of incarceration is an appropriate sentence.

In addition, the Court should impose a term of supervised release, and the government recommends a lifetime term of supervised release. A lifetime period of supervised release is critical because it will subject the defendant to ongoing monitoring and sex offender treatment. The conditions of supervised release should include: sex offender evaluation and treatment, restrictions on direct contact with minors, and monitoring or searches of the defendant's computers and Internet-capable devices. These conditions are justified by the defendant's admitted sexual preference for children, his exploitation of multiple children over a period of at least three years, and his subsequent viewing and accumulation of child pornography images and videos. In light of the specific circumstances of this case, the recommended conditions do not impose undue restrictions on the defendant's liberty interests but are appropriately calibrated to serve the purposes of sentencing.

---

[4]     The children were forensically interviewed and did not disclose any abuse by the defendant.

Based on the facts and circumstances of this case, the Court should impose all of the special conditions recommended by the United States Office of Probation in the PSR and at sentencing.  The defendant is further obligated under federal law to register as a sex offender for a minimum period of 25 years.

### 4.        Avoiding Unwarranted Sentencing Disparity

Although there have been other cases in this District involving production of child pornography, the defendant's case is unique in many regards.  In fashioning its sentencing recommendation, the government has considered these distinctive characteristics, including:  the large number of victims (17); the victims' very young age (all under 12); the defendant's position of trust as a camp counselor and teacher, the defendant's method of production (i.e., in person and surreptitious as opposed to online); the timeline of the offenses (23 separate instances over a period of three years); the defendant's motivations and deviant sexual preferences; and the defendant's evasion of apprehension for approximately five years after his criminal conduct came to light.

Moreover, this case is distinguishable because the defendant has received the immense benefit of resolving numerous charges in seven other jurisdictions through the plea agreement. This global resolution of charges saves the young victims from protracted and emotionally traumatic legal proceedings and conserves precious prosecutorial, judicial, and defense resources.  It also significantly limits the defendant's sentencing exposure.  The agreed-upon sentencing range of 22 to 30 years and the government's recommended sentence of 30 years are both far less than what the defendant could receive if other jurisdictions pursued charges.  The government's recommendation is fair and appropriate given the offense conduct, and is not longer than necessary to achieve the purposes of sentencing.

5.      **The Sentencing Guidelines and the Commission's Policy Statements**

In December 2012, the Sentencing Commission submitted a report to Congress concerning the Guidelines for child pornography offenses ("The CP Report").  The CP Report was released to the public in February 2013 and contained numerous observations that are relevant to a sentencing judge, with a primary focus on *non-production* offenses.[5]  However, the CP Report did recognize what is at the forefront of this case:  all child pornography offenses inherently involve the sexual abuse and exploitation of children.  The Report further emphasized that many victims suffer lifelong harm at know that their images are being used by offenders for sexual gratification.

With regard to federal production offenses, the CP Report found that sentencing has been less controversial than in non-production cases.  See CP Report at 247.  The number of production cases has grown substantially, from 10 cases in 1992 to 207 cases in 2010.  Id. Statutory penalties, guidelines ranges, and average sentences have likewise grown at a significant rate.  According to the CP report, in fiscal year 2010, the average prison sentence for production offenders was over 22 years (269.1 months).  Id. at 268.  In 2010, the "within range" rate for production cases was 56.8%, while the below range rate (excluding substantial assistance departures) was 35.9%.  Id. at 254.[6]  The CP Report further noted that a significant number of sentences (40.5% in fiscal year 2010) at or above the middle of the applicable guidelines range. Id. at 255.

---

[5]      The CP Report identified many problems with the non-production child pornography Guidelines and included recommendations about how to change the Guidelines to better account for offender behavior, including through the elimination of some specific offense characteristics and the revision and addition of other enhancements.  Those recommendations are not directly relevant to this production case.

[6]      It appears that the "below range" rate includes government sponsored departures for reasons other than substantial assistance.

Perhaps most relevant for this case, the CP Report noted that a majority of production cases had a single victim. Id. at 266. In fiscal year 2010, 122 out of 197 cases (61.9%) involved a single victim, while only 11 out of 197 cases (5.58%) involved more than four known victims. Here, the defendant victimized 17 children over a period of three years. Although the defendant's exploitation focused primarily on two victims, with several separate instances of production or attempted production involving a single victim, his foray into surreptitiously recording his students while they used the bathroom adds yet another dimension to his already deeply-troubling behavior. The Guidelines take into account the seriousness of multiple victim production cases by treating the exploitation of each minor as if it were contained in a separate count of conviction pursuant to U.S.S.C. § 2G2.1(d). The Guidelines and the recent CP Report thus support distinguishing this case from other single-victim production cases. The defendant's conduct exploited multiple children, caused significant harm, and warrants the government's recommended sentence.

**6.      Restitution for the Victims**

None of the identified victims have requested restitution at this time. If any such requests are received, the government will submit them to the Court for review. The government will also separately submit any victim impact statements that it receives.

**IV.**     **CONCLUSION**

WHEREFORE, for all of the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of imprisonment of 30 years, to be followed by a lifetime period of supervised release, with the recommended conditions of supervision.  The defendant is further required by statute to register as a sex offender for a period of 25 years.

Respectfully submitted,

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY


___/s/_____
Cassidy Kesler Pinegar, D.C. Bar # 490163
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7765
Cassidy.Pinegar@udoj.gov